THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OSBORNE CONSTRUCTION COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C18-0349-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion for partial summary judgment (Dkt. No. 19). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

In 2015, developer Renton Heritage LLC ("Renton Heritage") hired Plaintiff Osborne Construction Company ("Osborne") as the general contractor to manage the construction of an apartment complex in Renton, Washington. (*See generally* Dkt. Nos. 20-1–20-4.) Osborne contracted with Associated Materials, Inc. (d/b/a "Alside") to provide windows and doors for the project. (*See* Dkt. No. 20-4 at 28–45.) The parties' contract required Alside to add Osborne to its liability insurance as an "additional insured[]." (*Id.* at 43.)

Alside carried commercial liability insurance through Defendant Zurich American Insurance Company ("Zurich"). (*See* Dkt. No. 21 at 6–22.)[1] The policy was subject to two amendments, known as "endorsements," that are relevant to this case. The first endorsement (the "additional insured" endorsement) automatically confers status as an "additional insured" on "any person or organization to whom or to which [Alside][2] [is] required to provide additional insured status in a written contract or written agreement." (Dkt. No. 21 at 13.)[3] Additional insureds receive coverage under the policy for liability resulting from "property damage arising out of '[Alside's] products'." (*Id.*) The second relevant endorsement (the "SIR" endorsement) provides for a form of deductible known as a "Self Insured Retention" in the amount of $500,000. (*Id.* at 15.) The SIR is "a condition precedent to [Zurich's] liability," and requires payment of up to $500,000 for "all covered damages which [Alside] shall become legally obligated to pay," including defense costs. (*Id.* at 16.)

According to Renton Heritage, the windows and doors provided by Alside leaked. (*See* Dkt. Nos. 20-5 at 2, 20-6 at 2.) On July 27, 2017, after several unsuccessful attempts to resolve the issue, Renton Heritage sent Osborne a letter titled "Demand for Mediation and Arbitration of Owner's Claim for Liquidated Damages," invoking the dispute resolution provisions set out in the parties' contract. (Dkt. Nos. 20-6 at 4, 20-7 at 2.) On September 15, 2017, Osborne sent Zurich a letter (the "September 2017 letter") captioned "New Claim for Insurance Benefits RE: Renton Heritage LLC v. Osborne Construction." (Dkt. No. 20-1 at 2.) The letter identified

---

[1] Over time, Alside had more than one policy with Zurich. (Dkt. No. 19 at 4.) For the purposes of this order, any reference to Alside's policy with Zurich refers to the policy active from December 1, 2016 to December 1, 2017. (Dkt. No. 21 at 6–22.)

[2] In this and other provisions, the policy uses the term "you." (Dkt. No. 21 at 13.) The policy states that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations." (*Id.* at 9.) The only relevant Named Insured identified in the policy is Alside. (*Id.* at 8.) For clarity the Court replaces instances of "you" or "your" in policy language with "Alside."

[3] The Court quotes policy language that appears in the contract in all-caps in ordinary type.

Osborne as an "additional insured" on Alside's policy, and stated that Osborne was "mak[ing] a claim for insurance benefits and a full investigation" of Renton Heritage's claims for liquidated damages. (Dkt. No. 20-1 at 2.) The letter detailed Renton Heritage's allegations regarding the damage caused by Alside's products, and concluded: "Osborne hereby makes claim for all benefits due and owing under all applicable Zurich policies. Osborne respectfully requests Zurich to conduct and complete an investigation." (*Id.* at 3.) The letter indicated that the contract between Osborne and Alside, requiring that Osborne be made an additional insured, was attached. (*Id.*)

By letter dated October 19, 2017, Zurich denied coverage for Osborne's claim, writing that it "had an opportunity to investigate and consider the tender of defense and request for indemnity made by Osborne . . . and will neither defend nor indemnify Osborne." (Dkt. No. 20-8 at 2.) Zurich gave two justifications for its decision. First, it stated that it had "received no contracts, certificates of insurance, or additional insured endorsements that might support Osborne's claim for additional insured status on [Alside's] policies." (*Id.* at 3.) Second, it explained that because Alside had not satisfied the SIR, "Zurich currently owes no obligation under the policies to . . . [Alside] or any additional insured." (*Id.*) On October 22, 2017, Osborne emailed Zurich its contract with Alside and requested that Zurich revise its coverage decision. (Dkt. No. 21 at 29.) A Zurich claims adjuster received the contract, and indicated in his notes that Osborne qualified as an additional insured, but Zurich did not issue an updated coverage determination. (*See* Dkt. No. 21 at 50–51, 69.) In fact, Zurich did not respond at all. (*Id.*)

On March 7, 2018, Osborne sued Zurich for breach of contract and bad faith. (Dkt. No. 1.) In addition to the complaint, Osborne sent Zurich a copy of Renton Heritage's statement of damages against Osborne in the pending arbitration, submitted in February 2018, totaling $4,200,000. (Dkt. No. 21 at 58.) Several days later, Zurich responded, stating that it was "reviewing [its] coverage position in this matter." (*Id.* at 72.) By letter dated August 24, 2018, Zurich reversed its coverage decision, stating that Osborne's "July 2018 correspondence [was]

the first time that Osborne affirmatively asked [Zurich] for a defense."[4] (Dkt. No. 21 at 75.) Zurich then offered to appoint defense counsel while reserving its right to later deny coverage for the claim. (*Id.* at 75–81.) On September 17, 2018, Osborne rejected Zurich's proffered defense as "untimely," opting instead to pursue the claims against Zurich in litigation. (*Id.* at 87.)

Osborne now moves for partial summary judgment. First, Osborne seeks a ruling that Zurich "unreasonably breached its duty to defend Osborne" when it refused to appoint defense counsel in response to the September 2017 letter. (Dkt. No. 19 at 3.) Osborne also asks the Court to decide that, as a matter of law, Zurich breached its duty to defend in bad faith, and that it is therefore estopped from refusing to indemnify Osborne's claims. (*Id.* at 15–18.)

Zurich opposes Osborne's motion on several grounds. (*See* Dkt. No. 27.) First, it asserts that it did not owe Osborne a duty to defend in September 2017,[5] both because no arbitration proceeding was pending at that time and because Osborne never explicitly asked for a defense in the September 2017 letter. (*Id.* at 2–5, 23.) Second, Zurich contends that even if Osborne's initial letter was a sufficient tender, the SIR endorsement unambiguously relieved Zurich of any obligation—including of the duty to defend—until Alside paid $500,000 of defense costs. (*Id.* at 15–23, 24.) Finally, Zurich insists that even if this Court finds that it breached the duty to defend, coverage by estoppel is not appropriate because any breach was not in bad faith. (*Id.* at 14–15.)

//
//

---

[4] Zurich's reference appears to be to a letter Osborne sent Zurich, dated July 27, 2018. (*See* Dkt. No. 28-9.) That letter—sent three months after Osborne sued Zurich for breaching its duty to defend—was in response to a letter from Zurich inquiring whether Osborne was formally requesting appointment of defense counsel. (*See* Dkt. Nos. 28-8, 28-9.)

[5] Zurich contends that its duty to defend—and any breach of that duty—first arose in July 2018. (*See* Dkt. No. 27 at 8.) The Court finds that Zurich's duty to defend arose earlier, and that decision is based entirely on Zurich's response to the September 2017 letter. Therefore, the Court will not address Zurich's arguments related to a later breach or Osborne's July 2018 correspondence.

## II. DISCUSSION

### A. Legal Standard

The Court will grant a motion for summary judgment when the moving party demonstrates that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is not required to dispel all doubt as to all facts—rather, they must only demonstrate that there are "no *genuine* issue[s] of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one that affects the outcome of the case. *Id.* A dispute regarding a material fact is genuine if there is sufficient evidence for a reasonable juror to find for the non-moving party. *Id.* The Court must credit the non-moving party's evidence and draw justifiable inferences in its favor. *Id.* at 255.

### B. The Duty to Defend

Under Washington law, an insurer owes its insured two primary duties: the duty to indemnify and the duty to defend. *See Am. Best Foods, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010). The duty to indemnify—that is, the duty to pay the legal obligation of the insured for covered claims—only exists at the time liability is assessed, and only if the insurance policy covers the conduct giving rise to the liability. *Id.* The duty to defend, on the other hand, is much broader, and is triggered at the time an action within the terms of the policy is initiated against the insured. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002). The duty to defend imposes an obligation to represent the insured's interests throughout the lifecycle of the claims against it, including requiring the insurer to pursue a fair settlement of the claims. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 669 (Wash. 2008).

The duty to defend is triggered "if the insurance policy *conceivably covers* allegations" against the insured. *Am. Best Foods, Inc.*, 229 P.3d at 696; *see also Truck Ins. Exch.*, 58 P.3d at 282. Moreover, the allegations against the insured are "liberally construed" in favor of triggering the duty. *Id.* An insurer may not invoke an equivocal interpretation of the law or the policy to relieve itself of the duty to defend. *Woo v. Fireman's Fund Ins. Co.*, 208 P.3d 557, 564 (Wash.

2009). If the existence of a duty to defend cannot be determined from the face of the complaint, "the insurer must investigate the claim and give the insured the benefit of the doubt." *Truck Ins. Exch.*, 58 P.3d at 282. If the insurer remains uncertain, the insurer must provide a defense under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. *Id.* Washington law also imposes on an insurer an "all-encompassing" duty to act in good faith, requiring it to act promptly in response to a tender of defense and "deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests." *St. Paul Fire & Marine Ins. Co.*, 196 P.3d at 669 (quoting *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1136 (Wash. 1986)).

### C. Bad Faith and Coverage by Estoppel

An insurer's wrongful denial of insurance coverage is ordinarily remedied through traditional contract damages. *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). However, when the insurer's conduct is in "bad faith," the denial of insurance benefits is itself tortious. *Id.* To prevail on a claim of bad faith, an insured must show that its insurer breached a contract for insurance, and that such breach was "unreasonable, frivolous, or unfounded." *Id.* An insurer acts in bad faith when it relies on an "arguable legal interpretation of its own policy" or a "questionable interpretation of law" to deny a tender of defense. *Am. Best Foods, Inc.*, 229 P.3d at 700. In contrast, bad faith is not shown when a refusal "is based upon a reasonable interpretation of the insurance policy," even if that interpretation is ultimately incorrect. *Kirk*, 951 P.2d at 1126 (citing *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 760 P.2d 337, 347 (Wash. 1988)).

When an insurer denies a tender of defense in bad faith, Washington law requires that it be estopped from refusing to indemnify any liability eventually assessed against the insured on the claims the insurer refused to defend. *Id.* at 1127–28; *Woo*, 164 P.3d at 463. In other words, a bad faith refusal to defend "creates liability for the insurer to pay at least policy limits for any claim that should have been defended but was not." *Woo*, 208 P.3d at 564. The "coverage by

estoppel" remedy is intended to create "a strong incentive for the insurer to act in good faith, and [to] protect[] the insured against the insurer's bad faith conduct." *Kirk*, 951 P.2d at 1128.

### D. Zurich's Duty to Defend

Osborne's motion for partial summary judgment first requires the Court to determine if Zurich breached its duty to defend Osborne in its dispute with Renton Heritage. The dispositive issue, therefore, is whether Osborne's September 2017 letter alleged facts that, construed broadly in favor of Osborne, would "conceivably" be covered by Alside's policy. *Am. Best Foods, Inc.*, 229 P.3d at 696. Reading Zurich's October 2017 denial letter together with its response to Osborne's motion for partial summary judgment, Zurich expresses four reasons why it owed Osborne no duty to defend in September 2017. (*See* Dkt. No. 27 at 8.) The Court addresses each in turn.

#### 1. Osborne's Additional Insured Status

It is difficult to tell from Zurich's opposition to summary judgment whether it concedes that Osborne qualifies as an additional insured under the terms of Alside's policy. (*See* Dkt. No. 27 at 10.) Zurich initially asserted that Osborne was not an additional insured in response to the September 2017 letter, apparently because it never received a copy of Osborne's contract with Alside. (Dkt. No. 20-8 at 3.) Because the September 2017 letter is to be construed broadly in favor of the duty to defend, Osborne's status as an additional insured need not be definitively resolved here; if coverage was debatable, the duty to defend was triggered. *See Am. Best Foods, Inc.*, 229 P.3d at 696. Even viewing the facts in the light most favorable to Zurich—and therefore crediting its assertion that it did not receive the contract with the September 2017 letter—the record clearly establishes that Zurich was in receipt of the relevant contract on October 23, 2017. (*See* Dkt. No. 21 at 50–51, 69.) After receiving the contract but denying coverage, Zurich's adjuster even noted that Osborne did, in fact, qualify as an additional insured. (*Id.*) In view of Zurich's admissions and the relevant contract and policy language, the Court concludes that, with regard to Osborne's status as an additional insured, Zurich's duty to defend was triggered

no later than October 23, 2017, when it received the contract between Osborne and Alside. (*See* Dkt. No. 21 at 50–51.)

2. The SIR Endorsement

Zurich also contends that it had no duty to defend Osborne in September 2017 because Alside had not satisfied the $500,000 SIR. (*See* Dkt. No. 27 at 15–23.) The policy defines the self-insured retention to be the amount "which [Alside] must pay for all covered damages which [Alside] shall become legally obligated to pay" as a "condition precedent to [Zurich's] liability." (Dkt. No. 21 at 16, 22.) The SIR endorsement also clearly states that "payments by others, including . . . additional insureds . . . do not serve to satisfy" Alside's SIR. (*Id.* at 18.) The parties agree that at the time of the September 2017 letter, Alside had not satisfied the SIR. (Dkt. No. 28-2 at 2.) Osborne argues that the SIR related only to claims made by Alside, and did not apply to its claim as an additional insured. (Dkt. No. 21 at 9, 21–22.) Zurich, on the other hand, contends that the SIR relieved it of any duty to defend Osborne until Alside paid the first $500,000 of defense costs. (Dkt. No. 27 at 17.)

As with Osborne's status as an additional insured, the dispositive issue before the Court is whether the claims for which Osborne sought a defense were *conceivably* covered. *Am. Best Foods, Inc.*, 229 P.3d at 696. An equivocal interpretation of the SIR could not relieve Zurich of its duty to defend. *Id.* Zurich's reading of the SIR endorsement is unpersuasive. As Osborne points out, the endorsement required Alside to pay the first $500,000 that "[*Alside*] shall become legally obligated to pay." (Dkt. No. 21 at 22) (emphasis added). Osborne's claim dealt with its arbitration and obligations to Renton Heritage, and did not involve Alside. (*See* Dkt. No. 20-7 at 2.) Therefore, the dispute underlying Osborne's claim could not possibly obligate Alside to pay anything.[6] The practical outcome of Zurich's proposed interpretation of the SIR—that, barring

---

[6] Osborne also points to another policy endorsement, which established that Alside's policy "[wa]s primary insurance to, and w[ould] not seek contribution from any other insurance available to an additional insured" to argue that the SIR was inapplicable to its claim. (Dkt. No. 21 at 12.)

Alside's involvement in the arbitration, Osborne would only be entitled to a defense if Alside voluntarily funded $500,000 of Osborne's defense costs—seems entirely unrealistic, and is not supported under the plain definition of the SIR. (*See* Dkt. No. 27 at 20–21.)

As the preceding discussion makes clear, the role of the SIR endorsement in the factual scenario presented by this case is anything but clear. Moreover, as Zurich ultimately admitted when it offered to defend under a reservation of rights, no Washington court has interpreted a similar SIR endorsement. (Dkt. No. 21 at 81.) Thus, the Court finds that the SIR endorsement did not provide a reasonable basis for Zurich to refuse Osborne's tender of defense.

### 3. Pendency of an Arbitration to Defend

Zurich also argues that, at the time of Osborne's September 2017 letter, it did not owe a duty to defend because Renton Heritage had not initiated arbitration. In other words, Zurich asserts that it did not breach its duty to defend because at that time, there was nothing to defend. (*See* Dkt. No. 27 at 13–14.) However, Washington law provides that a party "initiates an arbitration proceeding by giving notice in a record to the other parties to the agreement to arbitrate in the agreed manner between the parties." Wash. Rev. Code § 7.04A.090(1). Osborne's contract with Renton Heritage established that disputes would be resolved first via mediation and then, if unsuccessful, by arbitration. (Dkt. No. 20-1 at 34.) Pursuant to the contract, a party demanding arbitration was required to file a demand—which could be made concurrently with a demand for mediation—in writing with the opposing party. (*Id.*) Under the terms of Alside's policy, Zurich was obligated to defend an insured against certain proceedings, including "[a]n arbitration proceeding." (Dkt. No. 21 at 9, 11.) Thus, the Court finds that Renton Heritage's letter captioned "Demand for Mediation and Arbitration" initiated an arbitration proceeding, which Zurich was obligated to defend, if such defense was properly requested, on July 26, 2017. (Dkt. No. 20-7 at 2.)

Zurich states that "[a]rbitration is scheduled for March 2019," which the Court takes as a reference to the date on which the scheduled arbitration hearing will begin. (Dkt. No. 27 at 14.)

Zurich thus appears to argue that it will owe no obligation to defend Osborne until the hearing begins. That argument fails for a variety of reasons. For one, it is belied by Zurich's repeated references, throughout the record, to a presently pending arbitration, as well as by its eventual offer to appoint counsel to defend Osborne. (*See, e.g.,* Dkt. No. 21 at 75) ("Renton Heritage commenced this arbitration in February [2018] . . . [Zurich] will appoint counsel to defend Osborne against potentially covered claims in this matter."). More importantly, Zurich's argument—apparently that its duty to defend Osborne obligates it only to represent Osborne at the arbitration hearing—is foreclosed by Washington law, which requires the insurer to seek equitable settlement of claims against an insured, something it can only do *before* a final hearing. *St. Paul Fire & Marine Ins. Co.*, 196 P.3d at 669. In fact, Washington's insurance code expressly identifies the failure to pursue settlement as an unfair insurance practice. Wash. Admin. Code 284-30-330(6).

In sum, Zurich's argument—that it did not breach its duty to defend when it denied Osborne's September 2017 letter because at that time there was nothing to defend—is unavailing. The Court finds no genuine issue of material fact that Zurich did, in fact, owe a duty to defend Osborne at that time against the arbitration proceeding initated by Renton Heritage.

### 4. Sufficiency of Osborne's Tender of Defense

Finally, Zurich argues that it did not breach its duty to defend Osborne in 2017 because it had no obligation to defend unless and until Osborne explicitly asked it to do so. (*See* Dkt. No. 27 at 8.) According to Zurich:

> Osborne's [September 2017] letter, calling itself a "New Claim for Insurance Benefits," was crafted to obfuscate. It did not use the words "defense," defend," "suit," "civil proceeding," "arbitration," or "any other alternative dispute resolution proceeding" for which Osborne requested [Zurich]'s consent to participate. Osborne's letter did not explain what it wanted, other than in the murkiest way: "The purpose of this letter is to make a claim for insurance benefits and a full investigation under any and all policies issued by your company. . .." A full investigation of what? What benefits was Osborne seeking? If Osborne wanted a defense, why did not Osborne say so and provide a copy of the suit Osborne wanted defended?

(Dkt. No. 27 at 3) (footnotes omitted). Zurich's argument boils down to a claim that Osborne's letter[7] failed to expressly tender a defense. That argument is unavailing for three reasons.

First, Washington law sets out no particular set of magic words, like those Zurich proposes, that are necessary to invoke an insurer's duty to defend. The seminal Washington case regarding what constitutes a tender of defense establishes that "the insured must affirmatively inform the insurer that its participation is desired." *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999). In *Leven*, an insured notified his insurer of claims against him that had been pending for seven years, at the same time he sought reimbursement for expenses he had incurred in defending against those claims over that time. *Id.* at 1155–59. The *Leven* court held that the insured's failure to communicate his desire for a defense for such an extended period of time relieved the insurer of the duty to defend. *Id. Leven* thus places the burden of first action—of "affirmatively" requesting the insurer's involvement—on the policyholder. *Id.*

Zurich's reliance on *Leven* to support its argument that Osborne's September 2017 letter was deficient is misplaced. As another court in this district, interpreting *Leven*, recently held:

> The concept of "tender" merely connotes a certain form of notice from an insured to its insurer, communicating its belief that the insurer's obligations of coverage and defense have been triggered by an event or series of events and inviting the insurer's participation. The mechanism by which that is accomplished need not be complicated nor overly formal.

*Snohomish Cty. v. Allied World Nat'l Assurance Co.*, 276 F. Supp. 3d 1046, 1054 (W.D. Wash. 2017). Osborne's September 2017 letter was captioned "New Claim for Insurance Benefits" and stated that Osborne was "mak[ing] claim for all benefits due and owing under" Alside's policy. (Dkt. No. 20-1 at 2–3.) All Washington law required for an effective tender is affirmative action, such as Osborne's letter, not a "particular set of words of phrases." *Snohomish Cty.*, 276 F. Supp.

---

[7] The Court notes that Zurich's representation that the September 2017 letter, although signed by Osborne's Vice President, was written by Richard Beal, an experienced insurance attorney, is directly contradicted by the record. (Dkt. No. 28-11 at 10) ("Q: Did Mr. Beal draft any part of [the September 2017] letter? A: I don't believe so."). Osborne's privilege logs, which Zurich relies on for that assertion, simply show that Mr. Beal was involved in an email exchange regarding drafts of the letter. (*See* Dkt. No. 28-1 at 117, 119.)

3d at 1054. The Court thus concludes that the September 2017 letter was sufficient to trigger Zurich's duty to defend. (Dkt. No. 20-1 at 3.)

Second, Zurich's present argument that Osborne "did not ask for a defense" is contradicted by Zurich's own response to the September 2017 letter. Zurich's October 2017 denial letter began: "Zurich[] has now had an opportunity to consider the *tender of defense* and request for indemnity made by Osborne . . .. For the reasons set forth below, there is no coverage for this claim under the policies. Accordingly, we will neither *defend* nor indemnify Osborne." (Dkt. No. 20-8 at 2) (emphasis added). Even if the Court construed the September 2017 letter as technically insufficient to notify Zurich that Osborne was seeking a defense, it is clear from the record that Zurich understood that letter to be a tender. Zurich conclusively states that the letter was deficient as a tender, but offers no argument for why the Court should not take the language its adjuster used in denying the "tender of defense" at face value. *See also Madera W. Condo. Ass'n v. First Specialty Ins. Co.*, Case No. C12-0857-JCC, Dkt. No. 58 at 6 (W.D. Wash. 2013) (determining that duty to defend was triggered where insurer referred to insured's correspondence as a "tender of defense").

Third, even if Osborne's letter was ambiguous—and even if Zurich did not evidence an understanding of what Osborne sought—the burden was on Zurich to clarify the matter before denying coverage. *See Truck Ins. Exch.*, 58 P.3d at 282. Zurich argues that, "rather than conduct itself as most insureds do if they disagree with an insurer . . . such as make a phone call or send a follow-up email or letter, Osborne did nothing and remained silent." (*See* Dkt. No. 27 at 5.) But in response to Zurich's letter denying its claim, Osborne did precisely what Zurich urges it should have—the very next day, Osborne emailed Zurich its contract with Alside. (Dkt. No. 21 at 29.) In response to that email, which the adjuster later acknowledged resolved one of Zurich's bases for denying coverage, it was Zurich who remained silent, not Osborne. (*Id.* at 69.) And even if Osborne had not sent the follow-up email, Zurich's argument impermissibly attempts to shirk its burden under Washington law of investigating a potential tender, and seeks instead to

1  impose on Osborne a duty to re-tender a claim that Zurich had already denied. The Court thus
2  finds no genuine issue of material fact regarding the sufficiency of Osborne's September 2017
3  letter as a tender of defense.

4  Having concluded that Osborne's September 2017 letter constituted a tender of defense
5  and that none of Zurich's proffered justifications for its denial of that request are sufficient, the
6  Court finds that Zurich breached the duty to defend, at the latest, on October 23, 2017.

### E. Bad Faith Coverage By Estoppel

The Court must now consider whether Zurich's breach of the duty to defend was "unreasonable, frivolous, or unfounded," and thus in bad faith. *Kirk*, 951 P.2d at 1126. Bad faith is typically a question of fact, but summary judgment is appropriate when "reasonable minds could not differ" that the refusal to defend was unreasonable. *See Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277–78 (Wash. 2003). Considering Zurich's four justifications for denying Osborne's tender of defense, the Court finds that Zurich acted in bad faith as a matter of law because its denial was based on "arguable" readings of the policy and "questionable" interpretations of Washington law not supported by the readily available facts. *Am. Best. Foods, Inc.*, 229 P.3d at 700. The Court briefly summarizes its reasoning as to each of those proffered justifications.

First, the day after denying Osborne's tender on the basis that it was not an additional insured, Zurich received the documentation establishing that status and internally noted that fact. (Dkt. No. 21 at 29.) Zurich's continued refusal to defend Osborne on that basis cannot be considered reasonable. (*See* Dkt. No. 21 at 50–51.) Second, the SIR endorsement at best arguably exempted Osborne's claims from coverage; because it did not clearly relieve Zurich of the duty to defend, Zurich's refusal to do so on that basis was unreasonable. (*See* Dkt. No. 27 at 16–23.) Third, Zurich's argument that no arbitration was pending at the time of the September 2017 letter was also an unreasonable basis to refuse to defend—Washington law is clear that an arbitration was initiated by Renton Heritage's letter demanding one in July 2017. (Dkt. No. 27 at

14.) Finally, Zurich's *post hoc* argument that the September 2017 letter was not a sufficient tender of defense is both affirmatively belied by its own statements characterizing the letter as a tender of defense and Washington law regarding the sufficiency of a tender. Thus, Zurich has offered no reasonable basis for its breach of the duty to defend, and the Court concludes that it acted in bad faith when it did so. *Am. Best. Foods, Inc.*, 229 P.3d at 700. Because the Court has made a finding of bad faith, Washington law requires that Zurich be estopped from denying coverage. *Kirk*, 951 P.2d at 1127–28.

## III. CONCLUSION

For the foregoing reasons, Osborne's motion for partial summary judgment (Dkt. No. 19) is GRANTED. The Court finds that Zurich breached its duty to defend Osborne in the arbitration with Renton Heritage on October 23, 2017, that such breach was in bad faith, and that therefore Zurich is estopped by Washington law from refusing to indemnify Osborne for any liability assessed as a result of the claims for which it sought a defense.

DATED this 20th day of December 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE